36 F.3d 1105
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 John L. LASTER, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health & Human Services,
Defendant-Appellee.
 No. 94-6201.
 United States Court of Appeals, Tenth Circuit.
 Sept. 26, 1994.
 
 ORDER AND JUDGMENT[1]
 Before MOORE, ANDERSON, and KELLY, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 John L. Laster appeals from an order of the district court affirming a decision by the Secretary of Health & Human Services to deny social security retirement benefits to Mr. Laster on the ground that he did not have the necessary quarters of coverage for fully insured status. The background of this case is fully developed in the report and recommendation of the United States Magistrate Judge, filed June 8, 1993, and the order entered by the district court on March 29, 1994. Accordingly, we do not repeat that material in detail here.
 
 
 3
 Mr. Laster filed his first application for retirement insurance benefits on January 31, 1986, reporting that he was born on January 15, 1918. He asserted in his application that he was self-employed in the oil industry, with earnings of $2,150 for 1985, and $1,500 for 1986. He acknowledged that all of the months for these years were non-service months, in which he did not perform substantial services in self-employment.
 
 
 4
 When contacted by representatives of the Social Security Administration, Mr. Laster explained that he merely owned mineral rights in various properties, which he leased to several oil companies. He did not have an operating interest in the oil and gas. He also acknowledged that the Laster Oil Company existed only in name and that there was no actual, viable company. Finally, Mr. Laster submitted a copy of an oil lease he had with Amoco Production Company, showing that he held a 1/5 interest in various oil and gas properties, and that Amoco was in charge of the production of oil and gas.
 
 
 5
 The Social Security Administration notified Mr. Laster that based upon the facts recited above, the income he reported was nonqualifying royalty income, not self-employment income. Therefore, no credit could be given for the years 1984 and 1985.
 
 
 6
 On June 4, 1990, Mr. Laster inquired of the Social Security Administration what the agency's records showed with respect to his earnings record. The agency responded that his earnings record demonstrated that he had the required twenty-nine quarters of coverage to receive retirement insurance benefits; however, he was also notified that this was not a formal determination and that his actual quarters of coverage could only be determined after he filed an application.
 
 
 7
 Mr. Laster filed his current application for retirement insurance benefits in July 1990, again asserting that he was self-employed, but did not report his earnings because he was over age 72. The agency investigated Mr. Laster's application and discovered the rejection of his application in 1986, and advice to Mr. Laster that the income he was claiming was nonqualifying royalty income, not self-employment income. The agency then corrected its records to show that Mr. Laster's earnings for the years 1985, 1986, and 1987 were zero for purposes of calculating qualifying quarters for retirement security income.
 
 
 8
 Mr. Laster contested this determination without success through the agency and then filed suit in district court. When the magistrate judge issued his report and recommendation adverse to Mr. Laster's claim, Laster objected, arguing partially that the income which he received for the years in question in the 1980s qualified as self-employment earnings. However, he does not pursue that argument on appeal, and there is substantial evidence in the record to support the Secretary's determination that the income in question cannot be used in calculating qualifying quarters of coverage for fully insured status.
 
 
 9
 Rather, on appeal Mr. Laster raises a host of technical arguments generally arising from three themes. The first is that he reported the income in question during the 1980s to the Internal Revenue Service as self-employment income and paid into the system based upon his own characterization of the income. When his application for benefits was turned down by the agency in 1990, the statute of limitations had run on Mr. Laster's ability to file a claim for refund of the amounts he had paid into the system by way of his tax returns in the 1980s. Thus, he argues that the government is having it both ways, keeping money which he has paid in, while not allowing him benefits, all in violation of the Fifth Amendment of the United States Constitution. He also argues in various ways that the government is estopped from denying him benefits because its records showed that he was qualified and, in fact, he had paid into the system through income tax reporting, and the money was being retained by the government. Finally, he argues that the Social Security Administration in various ways violated the Paperwork Reduction Act, proper regulations, and the applicable law, both in its 1986 determination of his application for benefits and in 1990.
 
 
 10
 We are not persuaded by these arguments. Mr. Laster had ample time to file for a refund from the Internal Revenue Service after being notified by the Social Security Administration in 1986 that his income was not self-employment income. Instead of filing a claim for refund, however, Mr. Laster allowed the statute of limitations to run, then reapplied for benefits, basing his argument in part on the fact that he could not now obtain a refund. While the agency could and perhaps should have notified the Internal Revenue Service of its findings in 1986, that still does not absolve Mr. Laster of his own responsibility, and we decline to give him the benefit of some sort of an estoppel or wrongful taking argument when he consciously allowed the statute of limitations to run on his right to claim a refund from the Internal Revenue Service.
 
 
 11
 Likewise, we see no infirmity in the procedures and paperwork employed by the Social Security Administration that, as a matter of law, would compel it to pay retirement benefits to Mr. Laster when the record shows on its face that he is not entitled to receive them. As the district court correctly points out in its order, "At the time the Secretary made her determination to remove income from plaintiff's earnings records, the applicable time limit had run with respect to the years 1985 and 1986. (Citation omitted.) Thus, the Secretary relied on the exception contained in 404.822(e)(2) to justify her decision." R. Vol. I, Tab 19 at 2. That section permits the correction of errors apparent on the face of records. 20 CFR 404.822(e)(2). As explained above, and as found by the district court, Mr. Laster's records on file with the Social Security Administration facially showed the error in question, and it was permissible for the Secretary to rely on the exception contained in 404.822(e)(2) to correct Mr. Laster's records and to deny coverage.
 
 
 12
 Accordingly, essentially for the reasons stated in the magistrate judge's report and recommendation, and the subsequent order of the district court, the judgment of the district court is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470